IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL HUFTILE,

      Plaintiff,                      No. CIV S–03-0604 RRB JFM P

   vs.

JACK VOGNSEN, PhD.,

      Defendant.                FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is proceeding in propria persona with a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff is being detained under the Sexually Violent Predators Act (Welf. & Inst. Act §§ 6600)(SVP Act) as an involuntary civil detainee under the jurisdiction of California's Department of Mental Health and the custody of Coalinga State Hospital. Petitioner contends that defendant Vognsen violated plaintiff's civil rights when he undertook certain steps that resulted in plaintiff being labeled a sexually violent predator and involuntarily deprived of his liberty as a civil detainee. However, plaintiff seeks solely prospective injunctive relief by way of this action, asking the court to enter an order prohibiting defendant Vognsen from taking such steps in the future.

        Defendant's motion to dismiss is presently before the court. Fed. R. Civ. P. 12(b)(1) and (6). Defendant argues, *inter alia*, that his conduct did not cause plaintiff any

1

deprivation of his constitutional or statutory rights.  Rather, defendant contends the SVPA required defendant to take steps necessary to determine whether plaintiff should be found to be a sexually violent predator under the statute.

I.  Legal Standards

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 2007 WL 1461066, slip op. at 8 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a

formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, WL 1461066 at 8. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Nietzke v. Williams, 490 U.S. 319, 327 (1989), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The legal principles applicable to a request for injunctive relief are well established. To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor. See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. Oakland Tribune, 762 F.2d at 1376. "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." Id. In the absence of a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits. Id.

The Ninth Circuit has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied:

> Martin explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits."

Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting Martin, 740 F.2d at 675).

Additionally, "[s]peculative injury does not constitute irreparable injury." Goldie's Bookstore v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984). In exercising their sound discretion, courts should pay particular regard to public consequences in granting an injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

II. California's Sexually Violent Predators Act

> The SVP Act defines an SVP as a person "convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others" i.e., is "likely [to] engage in sexually violent criminal behavior." See Cal. Welf. & Inst.Code § 6600(a). [Footnote omitted.] At least six months before a person who has committed the predicate offenses is to complete his sentence, he is evaluated by the Department of Corrections and Department of Mental Health. Id. § 6601. If those two departments agree that the person evaluated may be an SVP, a petition for commitment may be filed by the district attorney or counsel for the county in which the evaluated person was convicted. Id. § 6601(i). If that person is found by a jury to be an SVP who poses a danger to the health and safety of others, he is civilly committed for an indefinite period to commence after his criminal sentence is fulfilled. Id. §§ 6602-6604.

Hydrick v. Hunter, 466 F.3d 676 (9th Cir. 2006); see also Hubbs v. Alamao, 360 F.Supp.2d 1073 (C.D. Cal. 2005).

Once a SVP petition is filed, "it is reviewed by a superior court judge to determine whether it 'states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release.'" Cooley v. Superior Court (Marentez), 29 Cal.4th 228, 244-45 (2002), quoting Cal. Welf. & Inst. Code § 6601.5. If the superior court judge determines the petition supports a finding of probable cause, the judge orders the person detained pending the probable cause hearing. Id., Cooley, 29 Cal.4th at 245. At the probable cause hearing, the superior court determines "whether there is probably cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." Cal. Welf. & Inst. Code § 6602(a); People v. Hurtado, 28

Cal.4th 1179, 1182-83 (2002), cert. denied, 538 U.S. 963 (2003). If the superior court finds there is probable cause, the defendant is detained until a trial is conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility." Cal. Welf. & Inst. Code § 6602(a).

At trial on the civil commitment petition, "the defendant is entitled to a jury, the assistance of counsel, and the right to retain experts to perform further evaluations." People v. Torres, 25 Cal.4th 680, 683 (2001); Cal. Welf. & Inst. Code § 6603(a). If the defendant is found to be a sexually violent predator, "the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment. . . ." Cal. Welf. & Inst. Code § 6604. Before an SVP can be recommitted under the Act, he is entitled to a jury trial, the assistance of counsel, and the right to retain experts, and "the trier of fact must find, beyond a reasonable doubt, that the [individual] is likely to commit sexually violent *predatory* behavior upon his release." Hurtado, 28 Cal.4th at 1182 (emphasis in original); Cal. Welf. & Inst. Code §§ 6603-04.

III. Background

This case is proceeding as to defendant Vognsen and addresses prospective injunctive relief only. Plaintiff is precluded from challenging the underlying SVP finding under Heck v. Humphrey, 512 U.S. 477 (1994). See Huftile v. Miccio-Fonseca, 410 F.3d 1136 (9th Cir. 2005), cert. denied, 126 S.Ct. 2325 (2006). Plaintiff has also filed a petition for writ of habeas corpus challenging the decision to involuntarily retain him as a sexually violent predator, which is presently pending before another magistrate judge in this district. Huftile v. Hunter, CIV S-05-0174 GEB DAD P.[1]

---

[1] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

5

1    Plaintiff has also sued two other doctors who played a role in the sexually violent
2 predator civil commitment proceedings. The district court granted Val G. Farmer, Ph.D.
3 summary judgment on plaintiff's claims for injunctive relief based on psychotherapist-patient
4 privilege and denied plaintiff's motion for preliminary injunction[2] under a theory of abstention.
5 (CIV S-03-0585 DFL PAN P, see March 17, 2006 Order at 2; see also February 10, 2006
6 Findings and Recommendations.) Plaintiff's prospective injunctive relief claims against Dr.
7 Miccio-Fonseca remain pending at this time. CIV S-03-1522 FCD DAD P (motion to dismiss
8 similar to the one filed herein filed on February 9, 2007).

9 IV.  Plaintiff's Claims

10    Plaintiff claims defendant violated plaintiff's right to privacy in his mental health
11 records. Plaintiff also contends defendant violated plaintiff's rights by accessing his records in
12 South Dakota, specifically where plaintiff did not waive the privilege. South Dakota Codified
13 Law § 19-13-7.

> Individuals have a constitutionally protected interest in avoiding disclosure of personal matters, including medical information. Whalen v. Roe, 429 U.S. 589, 599-600 . . . (1977); Tucson Woman's Clinic v. Eden, 379 F.3d 531, 551 (9th Cir.2004). However, "the right to informational privacy is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." Tucson Woman's Clinic, 379 F.3d at 551 (citation omitted); Planned Parenthood of Southern Arizona v. Lawall, 307 F.3d 783, 790 (9th Cir.2002). Thus, the Court must " 'engage in the delicate task of weighing competing interests' to determine whether the government may properly disclose private information." In re Crawford, 194 F.3d 954, 959 (9th Cir.1999), cert. denied, 528 U.S. 1189 . . . (2000) (citation omitted); Planned Parenthood of Southern Arizona, 307 F.3d at 790. Relevant factors

---

[2] Dr. Farmer was employed by the West River Mental Health Center in Rapid City, South Dakota, from 1983 to 1992. (CIV S-0585 DFL PAN P, February 10, 2006 Findings and Recommendations at 2.) In 1984, plaintiff was a defendant in a criminal child molestation trial in South Dakota; plaintiff's attorney called Dr. Farmer as a witness in a mitigation and sentencing hearing. (Id.) In 2002, plaintiff was the subject of civil commitment proceedings under the SVPA. (Id.) Plaintiff's evaluators in that case, Dr. Miccio-Fonseca and Dr. Vognsen, testified for the state. (Id. at 2-3.) Plaintiff "did not permit these doctors to interview him." (Id. at 3.) "The district attorney independently obtained Farmer's report and called him as a witness to testify about it." (Id.)

>include: (1) the type of information requested; (2) the potential for harm in any subsequent non-consensual disclosure; (3) the adequacy of safeguards to prevent unauthorized disclosure; (4) the degree of need for access; and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. Tucson Woman's Clinic, 379 F.3d at 551; In re Crawford, 194 F.3d at 959. "The list is not exhaustive, and the relevant considerations will necessarily vary from case to case." In re Crawford, 194 F.3d at 959. "In most cases, it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales." Id.

Hubbs v. Alamao, 360 F.Supp.2d 1073, 1081 (C.D. Cal. 2005).

However,

>disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy.

Whalen, 429 U.S. at 602 (footnote omitted); see also United States v. Westinghouse Elec. Corp., 638 F.2d 570, 578 (3d Cir.1980) ("In recognition that the right of an individual to control access to her or his medical history is not absolute, courts and legislatures have determined that public health or other public concerns may support access to facts an individual might otherwise choose to withhold.").[3] In the context of the Sexually Violent Predator Act, the state has a compelling governmental interest in identifying, confining and treating SVPs who have been diagnosed as sexually violent and represent a distinct threat to the health and safety of the public. Addington v. Texas, 441 U.S. 418, 426 (1979); see also Kansas v. Hendricks, 521 U.S. 346, 372 (1997) (Kennedy, J., concurring) ("[T]he power of the State to confine persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing, and serious danger to society is well established.")

---

[3] There is a general California statute protecting the confidentiality of treatment records, see Cal. Welf. & Inst.Code § 5328, but special acts can provide exceptions to a statute's broad rules. See People v. Watson, 30 Cal.3d 290, 295, 179 Cal.Rptr. 43 (1981)).

Moreover, California's SVP Act

> 'contemplates and expressly provides for the disclosure of all relevant records, including medical and psychological records, and their consideration in an SVP commitment proceeding.' People v. Martinez, 88 Cal.App.4th 465, 475-76 . . . (2001); see also id. at 476-77. . . ('[T]he [Act] makes psychological records . . . relevant in determining whether a prisoner qualifies as an SVP. In addition, the [Act] contemplates that the psychological evaluators will have access to and consider these records in rendering their opinions and writing their reports. Moreover, since the Director of Corrections, the Director of Mental Health, and the prosecutor make important independent determinations concerning whether to seek an SVP commitment, the [Act] contemplates that these officials will review the reports of the psychological evaluators and thus learn information contained in psychological records that the evaluators consider relevant.'); W.I.C. §§ 6601(d) & (h) (providing copies of psychological evaluations to attorney filing petition for commitment as an SVP); 6603(c) (providing for updated or replacement evaluations to support a commitment petition, which 'shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated,' and making these evaluations available to the petitioning attorney and counsel for the individual who is the subject of the SVP petition).

Hubbs, 360 F.Supp. 2d at 1082.

South Dakota provides for exceptions to the records privilege as well:

> In any action or proceeding or quasi-judicial administrative proceeding, whenever the physical or mental health of any person is in issue, any privilege under § 19-13-7 shall conclusively be deemed to be waived at trial or for the purpose of discovery under chapter 15-6 if such action or proceeding is civil in nature; and such privilege shall also conclusively be deemed to be waived at trial or for any purpose provided by chapter 23A-12 or 23A-13 if such action or proceeding is criminal in nature.

South Dakota Codified Law § 19-2-3.

Accordingly, this court cannot find that it would be appropriate to enjoin defendant Vognsen from accessing plaintiff's medical or mental health records in the future, or from consulting with plaintiff's treating clinicians, because plaintiff's constitutional rights to privacy are not violated by defendant Vognsen's efforts in assessing whether plaintiff continues

8

to be a sexually violent predator. In re Crawford, 194 F.3d at 960; United States v. Dist. of Columbia, 44 F.Supp.2d 53, 62 (D.D.C.1999)("Weighing the competing interests asserted by the parties, the court concludes that the intrusion upon the defendant patients' privacy rights caused by allowing the plaintiff access to their records does not rise to the level of a constitutional violation given the plaintiff's compelling interest in obtaining the records.") While plaintiff has an important privacy interest in his mental health records, the state has a more compelling interest in obtaining said records under the SVPA.

To the extent plaintiff claims Dr. Vognsen violated plaintiff's right against self-incrimination, such claim should also be dismissed. The Fifth Amendment right against self-incrimination applies only to criminal cases. The United States Supreme Court has held that the Fifth Amendment does not apply in commitment proceedings under the SVPA because the proceedings are civil in nature. Allen v. Illinois, 478 U.S. 364 (1986); People v. Leonard, 78 Cal.App.4th 776, 789-93 (2000).

Plaintiff also complains that defendant failed to provide plaintiff with prior notice before attempting to interview plaintiff concerning assessment of plaintiff's mental health. However, the SVPA does not provide for advance notice prior to interview by the mental health professional. Plaintiff also contends defendant failed to advise plaintiff of his right to counsel; however, there is no provision for counsel during the mental health evaluations required by the SVPA. On the other hand, plaintiff did have the right to obtain his own independent mental health examination and review the same medical and psychological reports that Dr. Vognsen relied on. Cal. Welf. & Inst. Code § 6603(a). Plaintiff is also entitled to yearly reviews of his mental condition at which he is entitled to the appointment of an expert who is required to have access to all of plaintiff's records. Cal. Welf & Inst. Code § 6605(a).

Plaintiff alleges that defendant Vognsen violated plaintiff's constitutional rights by using the Standardized Assessment Protocol manual. However, as defendant points out, § 6601 requires its use: "The State Department of Mental Health shall evaluate the person in

accordance with a standardized assessment protocol, developed and updated by the State Department of Mental Health, to determine whether the person is a sexually violent predator as defined in this article." Cal. Health & Welf. Inst. Code § 6601(c). Under this statute, defendant cannot violate plaintiff's constitutional rights by using a protocol that is mandated by the statute. Accordingly, this court will not order Dr. Vognsen to prospectively refrain from using a protocol required by state law.

In his opposition to the motion to dismiss, plaintiff points out all sorts of alleged defects in Dr. Vognsen's theory and testimony in the 2002 proceeding. However, most of these concerns could have been addressed by plaintiff either in his probable cause hearing or at his 2002 civil commitment jury trial.[4] If for some reason plaintiff was unable to raise those issues in the proceedings in state court, those allegations are relevant to plaintiff's challenge to the conviction in an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As noted above, petitioner's application for writ of habeas corpus is presently pending. Plaintiff's claims that he was deprived of a fair trial and subjected to a violation of due process are more appropriately raised in the pending habeas proceedings. Similarly, his claim that Dr. Vognsen fabricated the diagnosed mental disorder in his evaluation is also more appropriately raised in the habeas proceeding. Plaintiff is not entitled, under the Constitution, to one particular psychological or psychiatric diagnosis. Plaintiff's disagreement with the diagnosis was more properly raised during the probable cause hearing and subsequent civil commitment jury trial. Any errors in those proceedings must be raised on collateral review through an application for writ of habeas corpus.

Whether or not future mental health professionals should be barred from referencing any of defendant's evaluations or prior testimony would hinge on findings made in the pending habeas case. In addition, as a general rule this court is unable to issue an order

---

[4] Plaintiff was given a probable cause hearing and probable cause for a recommitment trial was found on March 14, 2005. Huftile v. Miccio-Fonseca, 410 F.3d at 1142.

against individuals who are not parties to a suit pending before it. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100 (1969).[5] This claim does not implicate this court's jurisdiction in a way that might justify application of the All Writs Act to reach mental health professionals who are not named in the underlying litigation. <u>See</u> footnote 5, <u>supra</u>.

        The court agrees with plaintiff that the legal determination that plaintiff is a sexually violent predator is stigmatizing and injurious to his reputation, in addition to painfully depriving him of his liberty. However, plaintiff sustained that injury in 2002, five years ago.

        Whether or not Dr. Vognsen poses a future threat in this regard is speculative. Plaintiff has provided no information as to whether Dr. Vognsen played a role in the 2005 recommitment proceedings, despite being provided an opportunity to do so. (<u>See</u> October 24, 2005 Order at 5.) At that time it was noted that Dr. Miccio-Fonseca did not conduct any of the evaluations underlying the state's recommitment petition. <u>Id.</u>, citing <u>Huftile</u>, 410 F.3d at 1141. The allegations in plaintiff's fourth amended complaint pertaining to Dr. Vognsen refer to events in 2001, regarding initial evaluations leading up to the 2002 civil commitment trial. Plaintiff has not alleged a continued reliance on Dr. Vognsen's reports or testimony in the 2005 proceedings. Rather, plaintiff focuses on alleged defects in the prior reports and testimony, from 2001 and 2002, apparently trying to undo what has been done rather than attempt to stop it from happening again in the future. As noted above, this case is limited to prospective injunctive relief only. Accordingly, plaintiff has failed to demonstrate a significant threat of irreparable injury specifically from Dr. Vognsen in the future.

/////

---

[5] The fact that injunctive relief is sought from one not a party to litigation does not automatically preclude the court from acting. The All Writs Act, 28 U.S.C. § 1651(a) permits the court to issue writs "necessary or appropriate in aid of their jurisdictions and agreeable to the usages and principles of law." The All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction. <u>Plum Creek Lumber Company v. Hutton</u>, 608 F.2d 1283, 1289 (9th Cir. 1979). The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons or entities not a party to the underlying litigation. <u>United States v. New York Telephone Co.</u>, 434 U.S. 159, 174 (1977).

11

In light of the above, IT IS HEREBY RECOMMENDED that defendant's March 26, 2007 motion to dismiss be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 21, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

/001; huft0604.mtd